IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUTOZONE, INC., a Nevada )
corporation, and AUTOZONE PARTS, )
INC. (f/k/a Speedbar, Inc.), )
 )
    Plaintiffs-counterdefendants, )
 )
v. ) No. 03 C 8152
 )
MICHAEL STRICK, an Illinois )
citizen, STRICK ENTERPRISES, )
INC., an Illinois corporation, )
and STRICK, INC., an Illinois )
corporation, )
 )
    Defendants-counterclaimants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs AutoZone, Inc. and AutoZone Parts, Inc. (formerly known as Speedbar, Inc.)[1] have registered the mark AutoZone and some variations including AutoZone. Plaintiffs operate numerous automobile parts retail stores that use the AutoZone mark. In January 2002, plaintiffs were issued a registration for the mark Zone for retail automotive store services. The initial application for the Zone mark was

---

[1] For present purposes, it is unnecessary to distinguish between the two plaintiffs.

submitted in August 1999.  Defendants Michael Strick, Strick, Inc., and Strick Enterprises, Inc.[2] operate a quick oil change business known as Oil Zone.  Oil Zone has two locations in suburban Chicago, one in Wheaton, Illinois and one in Naperville, Illinois.  The Wheaton location opened in 1996 and the Naperville location in 1998.  The Naperville location also has a car wash that uses the mark Wash Zone.  Defendants registered the Oil Zone mark with the state of Illinois in 1996.  It is undisputed that plaintiffs have known of defendants' use of the two marks since at least December 1998.  Presently pending is plaintiffs' motion for summary judgment seeking to dismiss all or part of four counterclaims and one affirmative defense.[3]

Plaintiffs filed this action in November 2003.  In their Amended Complaint, plaintiffs do not seek any damages. Plaintiffs only request equitable relief, essentially that

---

[2] For present purposes, it is unnecessary to distinguish between the three defendants.

[3] Plaintiffs filed three separate motions for summary judgment and initially attempted to file separate briefs in support of each motion for summary judgment.  The court struck the separate briefs supporting the first two motions and required that plaintiffs file a single brief and fact statement supporting all the motions.  Plaintiffs were granted leave to file a 21-page supporting brief.  That brief, however, is unnecessarily repetitive and otherwise fails to get to the point.  The arguments that are presented could have been made in less than the 15-page limit ordinarily permitted by Local Rule.  Should plaintiffs succeed on the merits of their claims and thereafter seek an award of attorney fees, most of the attorney fees incurred in preparing, briefing, and presenting the motions for summary judgment would likely be noncompensable because not reasonably incurred.

- 2 -

defendants discontinue the use of Oil Zone and Wash Zone. Plaintiffs also request costs and attorney fees. The Amended Complaint is denominated as having four counts. Count One is denominated as service mark and trademark infringement in violation of 15 U.S.C. § 1114(1). Count Two is denominated as common law trade name infringement, based on Illinois common law. Count Three is denominated as unfair competition in violation of 15 U.S.C. § 1125(a) and Illinois common law. Count Four is denominated as service mark and trademark dilution in violation of 15 U.S.C. § 1125(c) and 765 ILCS 1036/65.

In answer to the Amended Complaint, defendants assert 16 affirmative defenses, some of which may not actually be affirmative defenses on which defendants bear the burden of proof. One of the asserted defenses is laches. Defendants have also filed a countercomplaint which is denominated as having six counterclaims. Counterclaim I is that, pursuant to 15 U.S.C. § 1119, plaintiffs' registration for Zone should be cancelled because, prior to August 1999, it was in use by others in connection with retail automotive store services. Counterclaim II is denominated as a claim for false or fraudulent registration of a mark in violation of 15 U.S.C. § 1120 in that plaintiffs had prior knowledge of defendants' use of the mark Zone, but did not disclose that fact in their applications. It is alleged that defendants suffered damages as a result, including the damages of incurring costs and attorney fees

defending against the present lawsuit. Counterclaim III is denominated as being a claim for infringement of defendants' Illinois Oil Zone trademark in violation of 765 ILCS 1036/60, as well as a claim for common law infringement and common law unfair competition. Counterclaim IV is denominated as a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2. Counterclaim V is denominated as a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2. Counterclaim VI is denominated as a claim for an accounting.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Eiencorp, Inc. v. Rocky Mountain Radar, Inc., 398 F.3d 962, 965 (7th Cir. 2005); Estate of Moreland v. Dieter, 395 F.3d 747, 758 (7th Cir.), cert. denied, 125 S. Ct. 2915 (2005); Hall v. Bennett, 379 F.3d 462, 464 (7th Cir. 2004); Hudson v. Chicago Transit Authority, 375 F.3d 552, 558 (7th Cir. 2004). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001); Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999). The nonmovant, however, must make a showing sufficient to establish any essential element for which he or it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Binz v. Brandt Construction Co., 301 F.3d 529, 532 (7th Cir. 2002); Traylor v. Brown,

295 F.3d 783, 790 (7th Cir. 2002). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Yasak v. Retirement Board of Policemen's Annuity & Benefit Fund of Chicago, 357 F.3d 677, 679 (7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988); Shyman v. UNUM Life Insurance Co. of America, 2004 WL 609280 *2 (N.D. Ill. March 25, 2004). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" Logan, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude

summary judgment even when they are in dispute."
Id. (citation omitted). In determining whether
the nonmovant has identified a "material" issue
of fact for trial, we are guided by the
applicable substantive law; "[o]nly disputes that
could affect the outcome of the suit under
governing law will properly preclude the entry of
summary judgment." McGinn v. Burlington Northern
R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996)
(citation omitted). Furthermore, a factual
dispute is "genuine" for summary judgment
purposes only when there is "sufficient evidence
favoring the nonmoving party for a jury to return
a verdict for that party." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986). Hence, a "metaphysical
doubt" regarding the existence of a genuine fact
issue is not enough to stave off summary
judgment, and "the nonmovant fails to demonstrate
a genuine issue for trial 'where the record taken
as a whole could not lead a rational trier of
fact to find for the non-moving party . . . .'"
Logan, 96 F.3d at 978 (quoting Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
(1986)).

Outlaw, 259 F.3d at 837.

Regarding Counterclaims III, IV, and V, plaintiffs contend the prayers for compensatory and punitive damages should be stricken because defendants cannot show they suffered any compensatory damages.[4] Plaintiffs do not contend that the counterclaims should be dismissed in their entirety because defendants also seek equitable relief. As to Counterclaim II, plaintiffs contend that counterclaim should be dismissed in its

---

[4]The Countercomplaint contains one prayer for relief, not separate prayers for each counterclaim. Except as to specific statutory references contained in the prayer, it is assumed that all requested damages relate to Counterclaims II, III, IV, and V. Counts I and VI are clear that, respectively, they request only cancellation of the registration and an accounting.

entirety because defendants cannot show any compensatory damages and do not request equitable relief on that counterclaim. In response to the motion for summary judgment, defendants admit that they have no evidence that their Oil Zone establishments lost any revenues or profits because of plaintiffs' use of Oil Zone. They, however, contend that they can show other forms of damages.

In support of their summary judgment motion, plaintiffs contend that defendants cannot show any lost revenues or profits at defendants' establishments. There is, however, no contention by plaintiffs that they had no profits related to their own use of the Oil Zone mark. Since that fact issue is not raised by plaintiffs' motions, defendants were not required to respond by providing evidence supporting that plaintiffs profited from use of the mark. For present purposes, it must be assumed that plaintiffs profited from use of the mark.

The available remedies for violations of § 60 of the Illinois Trademark Registration and Protection Act are provided for in § 70 of the Act. See 765 ILCS 1036/60, 70. The monetary remedies under § 70 are not limited to damages suffered by the trademark owner. The owner may also be entitled to the profits the defendant derived from use of the mark, as well as trebling of that amount if the use was with knowledge or in bad faith. Id. § 70. The prayer for damages related to Counterclaim III will not be stricken.

Counterclaim IV alleges a violation of the Illinois Deceptive Trade Practices Act. Relief under that Act is limited

to injunctive relief. 815 ILCS 510/3; Smith v. Prime Cable of Chicago, 276 Ill. App. 3d 843, 658 N.E.2d 1325, 1337 (1st Dist. 1995), appeal denied, 166 Ill.2d 554, 664 N.E.2d 648 (1996). Fees that defendants incur in defending against plaintiffs' present lawsuit are not awardable as damages under this Act and defendants do not contend otherwise. To the extent successful on Counterclaim IV, defendants may obtain their costs and fees incurred in pursuing this counterclaim if they show plaintiffs "wilfully engaged in a deceptive trade practice." 815 ILCS 510/3. Any prayer for monetary damages related to Counterclaim IV will be stricken.

As for Counterclaim V, a private claimant may only bring a Consumer Fraud Act claim if the claimant suffered "actual damages." 815 ILCS 505/10a(a); Xydakis v. Target, Inc., 333 F. Supp. 2d 683, reconsideration denied, 333 F. Supp. 2d 686 (N.D. Ill. 2004). Even if defendants only seek to disgorge plaintiffs' profits, defendants must also show that they suffered actual damages in that they lost customers to plaintiffs.[5] B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 76 F. Supp. 2d 868, 873 (N.D. Ill. 1999), aff'd, 258 F.3d 578 (7th Cir. 2001). Also, even injunctive relief requires that the claimant have suffered

---

[5] In ¶ 70 of Counterclaim V, defendants allege they suffered the injury of the cost of defending against plaintiffs' lawsuit. In response to plaintiffs' summary judgment motion, defendants no longer contend that is a type of actual injury. Instead, defendants argue that they may pursue injunctive relief only and that they can recover their costs and fees incurred in pursuing such relief. See Defs. Response Brief at 5-6 [Docket Entry 76].

actual damages.  Xydakis, supra.  Since defendants have presented no evidence supporting that they suffered actual damages, Counterclaim V will be dismissed in its entirety.

As for Counterclaim II, damages proximately caused by the false registration is a necessary element of a § 1120 claim. United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1226 (10th Cir. 2000); Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc., 989 F.2d 985, 990 (8th Cir.), cert. denied, 510 U.S. 928 (1993).  As previously discussed, defendants cannot show that they lost any sales as a consequence of the allegedly false application.  Defendants claim they are incurring litigation costs in defense of plaintiffs' lawsuit seeking to enforce the mark.  Such costs, however, are not an injury or damages that can support a § 1120 claim.  Exxon Corp. v. Exxene Corp., 696 F.2d 544, 550-51 (7th Cir. 1982); Gilbert/Robinson, 989 F.2d at 991 n.5.  Counterclaim II will be dismissed.

The other issue raised by plaintiffs' motion is whether facts support a laches defense by defendants.  It is undisputed that plaintiffs were aware of defendants' use of Oil Zone and Wash Zone by at least December 1998 when plaintiffs received a report from one of their investigators.  Plaintiffs made no complaint about defendants' use of these marks until first sending a protest letter to defendants in February 2003, which was four years and two months later.  Plaintiffs contend that, under Seventh Circuit case law, such a period of time is per se insufficient to support a laches defense when, as is true here, plaintiffs are seeking injunctive relief only.  In response to

summary judgment, defendants have presented evidence supporting that they have incurred substantial expenses promoting the Oil Zone and Wash Zone names.

The defense of laches generally requires a fact-intensive inquiry. In re Rovell, 194 F.3d 867, 871 (7th Cir. 1999); PSN Illinois, Inc. v. Ivoclar Vivadent, Inc., ___ F. Supp. 2d ___, 2005 WL 2542611 *3 (N.D. Ill. Oct. 10, 2005). Although it is usually not amenable to being resolved on summary judgment, there are some circumstances where laches can be resolved on such a motion. Smith v. Caterpillar, Inc., 338 F.3d 730, 733 (7th Cir. 2003); PSN Illinois, supra; Ameripay LLC v. Ameripay Payroll, Ltd., 2005 WL 2293676 *3 (N.D. Ill. Sept. 16, 2005). "For laches to apply in a trademark infringement case, the defendant must show that the plaintiff had knowledge of the defendant's use of an allegedly infringing mark, that the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and that the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time." Chattanoga Manufacturing, Inc. v. Nike, Inc., 301 F.3d 789, 792-93 (7th Cir. 2002) (citations omitted). The Seventh Circuit applies a "sliding scale" approach. The magnitude of prejudice that must be shown has an inverse relationship with the length of delay; that is, the longer the delay, the less prejudice that need be shown. Smith, 338 F.3d at 733; Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 824 (7th Cir. 1999). Similarly, the level of reasonableness of or inexcusable nature of the delay should be factored into the sliding scale. Shelwin Trading, Inc. v. M/V

Quo Vadis, 1987 WL 8735 *2 (S.D. Tex. March 26, 1987). All the facts and circumstances must be considered in weighing the equities involved. Clever Ideas, Inc. v. Citicorp Diners Club, Inc., 2003 WL 21982141 *11 (N.D. Ill. Aug. 20, 2003)

The Seventh Circuit has held that circumstances may be sufficient to bar a claim for past damages without also being sufficient to bar a claim for prospective relief enjoining further trademark violations. James Burrough Ltd. v. Sign of Beefeater, Inc., 572 F.2d 574, 578-79 (7th Cir. 1978). See also Hot Wax, 191 F.3d at 824 n.3. A delay may be so prolonged and inexcusable that it is sufficient to bar any relief whatsoever, including injunctive relief. Seven-Up Co. v. O-So-Grape Co., 283 F.2d 103, 106 (7th Cir. 1960). See also Hot Wax, 191 F.3d at 824 n.3. No Seventh Circuit case, however, establishes any fixed period of delay that is necessary to support barring injunctive relief.[6] Moreover, considering the delay side only is inconsistent with the sliding scale approach. Whether to apply laches can only be determined by balancing the length of delay against the magnitude of prejudice, while also taking into consideration any other pertinent factors. There could be an amount of prejudice to the alleged infringer that would be so

---

[6] In Gaffrig Performance Industries, Inc. v. Livorsi Marine, Inc., 2003 WL 23144859 *18 (N.D. Ill. Dec. 22, 2003), the district court held that a delay of six-to-nine years was insufficient to bar injunctive relief, apparently without consideration of the prejudicial effect of the delay. As is set forth below, this court respectively disagrees that such a determination can be made without also balancing the extent of prejudice.

great that a relatively shorter period of delay is sufficient to bar injunctive relief. Since plaintiffs' motion addresses only the delay factor, it cannot be conclusively determined that laches would be inappropriate. Additionally, since plaintiffs do not raise any issue regarding the prejudice suffered by defendants, defendants were not obliged to present evidence fully establishing the degree of prejudice they may have suffered. Since plaintiffs' motion fails to address all factors pertinent to a laches determination, plaintiffs cannot be entitled to summary judgment on this issue.

The next step in this case is the preparation of the final pretrial order. During that preparation, the parties should consider narrowing the issues they intend to present to the trier of fact.[7] Each side raises a number of overlapping claims, some of which add little or nothing to the principal claims. To avoid confusion, the parties should consider limiting the claims and defenses they intend to pursue at trial.

IT IS THEREFORE ORDERED that plaintiffs' motion for partial summary judgment as to defendants' third, fourth, and fifth counterclaims [56] is granted in part and denied in part. Plaintiffs' motion for summary judgment as to defendants' second counterclaim [58] is granted. Plaintiffs' motion for summary judgment as to defendants' laches defense [70] is denied.

---

[7]Since a number of equitable claims are raised, the pretrial order must also be clear as to which claims are for a jury and which claims are solely for the judge. The parties also must be clear as to the burdens of proof applicable to the various claims and defenses.

Counterclaims II and IV are dismissed. AutoZone Parts, Inc. (f/k/a Speedbar, Inc.) is substituted for plaintiff-counterdefendant Speedbar, Inc. and the Clerk of the Court is directed to accordingly amend the docket. As to Counterclaim IV, any prayer for monetary relief is stricken. In open court on December 14, 2005 at 11:00 a.m., the parties shall present an original and one copy of a final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER 3, 2005