IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUTOZONE, INC., a Nevada )
corporation, and AUTOZONE PARTS, )
INC. (f/k/a Speedbar, Inc.), )
                                    )
        Plaintiffs-counterdefendants, )
                                    )
    v.                              )    No. 03 C 8152
                                    )
MICHAEL STRICK, an Illinois )
citizen, STRICK ENTERPRISES, )
INC., an Illinois corporation, )
and STRICK, INC., an Illinois )
corporation, )
                                    )
        Defendants-counterclaimants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs AutoZone, Inc. and AutoZone Parts, Inc.
(formerly known as Speedbar, Inc.)[1] have registered the mark
AutoZone and some variations including autozone.com. and
AutoZone & Design. Plaintiffs operate numerous automobile parts
retail stores that use the AutoZone mark. In January 2002,
plaintiffs were issued a registration for the mark Zone for
retail automotive store services. The initial application for
the Zone mark was submitted in August 1999. Defendants Michael

---

[1]For present purposes, it is unnecessary to distinguish
between the two plaintiffs.

Strick, Strick, Inc., and Strick Enterprises, Inc.[2] operate a quick oil change business known as Oil Zone. Oil Zone has two locations in suburban Chicago, one in Wheaton, Illinois and one in Naperville, Illinois. The Wheaton location opened in 1996 and the Naperville location in 1998. The Naperville location also has a car wash that uses the mark Wash Zone. The Oil Zone mark was registered with the state of Illinois in 1996. It is undisputed that plaintiffs have known of defendants' use of the two marks since at least December 1998. Presently pending is defendants' motion for summary judgment seeking to dismiss all of plaintiffs' infringement claims on the ground that the undisputed facts support that there is no likelihood of confusion. Defendants contend they are entitled to summary judgment on the dilution claim because dilution cannot be proven. Defendants also contend the undisputed facts support that plaintiffs' claims are barred by laches.

Plaintiffs filed this action in November 2003. In their Amended Complaint, plaintiffs do not seek any damages. Plaintiffs only request equitable relief, essentially that defendants discontinue the use of Oil Zone and Wash Zone. Plaintiffs also request costs and attorney fees. The Amended

---

[2]For present purposes, it is unnecessary to distinguish between the three defendants.

Complaint has four counts. Count One claims service mark and trademark infringement in violation of 15 U.S.C. § 1114(1). Count Two claims common law trade name infringement, based on Illinois common law. Count Three claims unfair competition in violation of 15 U.S.C. § 1125(a) and Illinois common law. Count Four claims service mark and trademark dilution in violation of 15 U.S.C. § 1125(c) and 765 ILCS 1036/65. Following a prior ruling on plaintiffs' motion for summary judgment, see AutoZone, Inc. v. Strick, 2005 WL 2978708 (N.D. Ill. Nov. 3, 2005), defendants have counterclaims pending that seek cancellation of plaintiff's Zone mark and which allege infringement of defendant's Oil Zone Illinois trademark and other related state law claims.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Eiencorp, Inc. v. Rocky Mountain Radar, Inc., 398 F.3d 962, 965 (7th Cir. 2005); Estate of Moreland v. Dieter, 395 F.3d 747, 758 (7th Cir.), cert. denied, 545 U.S. 1115 (2005); Hall v. Bennett, 379 F.3d 462, 464 (7th Cir. 2004); Hudson v. Chicago Transit Authority, 375 F.3d 552, 558 (7th Cir. 2004). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Outlaw v. Newkirk, 259 F.3d

- 3 -

833, 837 (7th Cir. 2001); Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999). The nonmovant, however, must make a showing sufficient to establish any essential element for which he or it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Binz v. Brandt Construction Co., 301 F.3d 529, 532 (7th Cir. 2002); Traylor v. Brown, 295 F.3d 783, 790 (7th Cir. 2002). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Yasak v. Retirement Board of Policemen's Annuity & Benefit Fund of Chicago, 357 F.3d 677, 679 (7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988); Shyman v. UNUM Life Insurance Co. of America, 2004 WL 609280 *2 (N.D. Ill. March 25, 2004). As the Seventh Circuit has summarized:

> The party moving for summary judgment
> carries the initial burden of production to
> identify "those portions of the pleadings,
> depositions, answers to interrogatories, and
> admissions on file, together with the affidavits,
> if any, which it believes demonstrate the absence

of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" Logan, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Id. (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" Logan, 96 F.3d at 978 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Outlaw, 259 F.3d at 837.

Defendants contend the Zone mark is not at issue because plaintiffs did not begin to use that mark until after defendants

- 5 -

were already using Oil Zone and Wash Zone. Plaintiffs do not
contend otherwise. The only mark relied upon by plaintiffs in
opposing summary judgment is the AutoZone mark. At least for
purposes of summary judgment, defendants do not dispute that
AutoZone is a protectable mark and that plaintiffs' use of this
mark preceded defendants' use of Oil Zone and Wash Zone. A
necessary element of each of plaintiffs' first three counts is
that there is a likelihood of confusion between the AutoZone
mark and defendants' two marks. See CAE, Inc. v. Clean Air
Engineering, Inc., 267 F.3d 660, 673-74 (7th Cir. 2001);
SparkNet Communications, L.P. v. Bonneville International Corp.,
386 F. Supp. 2d 965, 973-74 (N.D. Ill. 2005). Defendant does not
dispute that the same likelihood of confusion analysis applies
to both the federal claims and the state law claim. Tony Jones
Apparel, Inc. v. Indigo USA LLC, 2003 WL 22220193 *3 (N.D. Ill.
Sept. 24, 2003); Ty, Inc. v. Agnes M. Ltd., 2001 WL 1414210 *5
(N.D. Ill. Nov. 9, 2001). Plaintiffs bear the burden of showing
likelihood of confusion. CAE, 267 F.3d at 673; SparkNet, 386
F. Supp. 2d at 973. Therefore, in response to defendant's motion
for summary judgment, plaintiffs must present sufficient evidence
from which a reasonable trier of fact could find that a
likelihood of confusion exists.

Seven factors are considered in analyzing likelihood of confusion: "(1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the plaintiff's marks, (6) any evidence of actual confusion, and (7) the defendant's intent to palm off its goods as those of the plaintiff's." Promatek Industries, Ltd. v. Equitrac Corp., 300 F.3d 808, 812 (7th Cir. 2002). Accord CAE, 267 F.3d at 677-78; RDK Corp. v. Larson Bakery, Inc., 2006 WL 2168797 *18 (E.D. Wis. July 31, 2006). "The likelihood of confusion test is an equitable balancing test." CAE, 267 F.3d at 678 (quoting Barbecue Marx, Inc. v. 551 Ogden, Inc., 235 F.3d 1041, 1044 (7th Cir. 2000)). "No single factor is dispositive and courts may assign varying weights to each of the factors depending on the facts presented. In many cases, however, three of the factors are likely to be particularly important: the similarity of the marks, the defendant's intent, and actual confusion." CAE, 267 F.3d at 678 (citing Barbecue Marx, 235 F.3d at 1044).

Plaintiffs operate approximately 3,500 retail stores under the name AutoZone. They are located in 48 states and Mexico. The stores provide a full array of automotive products, including motor oil, oil filters, and related products. The

stores also sell products for washing automobiles. AutoZone's
primary business is selling auto parts and supplies. The retail
stores do not have service areas with lifts nor do they have
areas for washing cars. The stores do provide some advice and
diagnostic guidance, but provide only limited services such as
oil reclamation; testing of batteries, alternators, and starters;
replacement of wiper blades and batteries; and resurfacing of
drums and rotators. AutoZone stores do not perform oil changes,
lube service, or car washes. Approximately 90% of AutoZone's
business is the "do-it-yourself" business of selling to consumers
who work on their own cars. The other 10% is sales to commercial
repair establishments. Except for the limited services set forth
above, as to both customer segments, the customer or a third
party is performing the actual service work with the supplies,
not AutoZone.

     Defendants operate an Oil Zone located in Wheaton,
Illinois. It has been operating under this name since at least
July 1996. There is an AutoZone store located within a mile of
the Wheaton store. This AutoZone store opened after 1996.
Plaintiffs also operate a combined Oil Zone and Wash Zone in
Naperville, Illinois. The Naperville location, including the
Wash Zone, opened in 1998. The Oil Zones perform 10-minute oil
changes, transmission services, rear deferential services, and

- 8 -

coolant flushes. On rare occasions, the Oil Zones will sell bottles or cans of oil independent of performing an oil change. The Wash Zone has an automated car wash. Most of the customers for each location reside within one to three miles of the location.

Prior to 1996, plaintiffs registered both AUTOZONE and the AutoZone logo with the diagonal speedbar. In signage, print advertisements, and when shown on television, the speedbar version is used. Obviously, in radio advertisements or when otherwise spoken, autozone is not accompanied by the speedbar. The speedbar logo includes diagonal stripes to the left of AutoZone. A and Z are capitalized, the other letters are lower case, and there is no space between auto and zone. The lettering is a sans serif style design. The stripes of the speedbar are thicker on the left and get thinner to the right. The stripes are at the same slant as the letters. When in color, red and orange are used, with the stripes orange and the letters red. An example is:



At retail stores, this mark appears in signage on the front, above doors, and in various places in the interior. This mark is also used in advertising.

Defendants' Oil Zone and Wash Zone marks are in all capitals, with the O/W and Z larger than the other letters. There is a space between Oil/Wash and Zone. The Oil Zone mark appears on signage in front of each location, with Wash Zone also being on the sign for the Naperville location. On both signs, Oil Zone is in green. Wash Zone is in blue on the one sign. The marks are also used in written advertisements. The same lettering and spacing is used in the advertisements, but are not necessarily in color. Often, including on most of the signage, both marks appear with a single line on the bottom of both words and two (usually) thinner horizontal lines going through the "one" portion of Zone. An example is:



The first factor in the likelihood of confusion analysis is the similarity of the marks. The similarity determination involves considerations of "the sound, sight and overall impression of the two marks," <u>Best Vacuum, Inc. v. Ian Design,</u>

Inc., 2005 WL 1185817 *8 (N.D. Ill. Jan. 18, 2005), as well as
the meaning of the words in the mark. Henri's Food Products
Co. v. Kraft, Inc., 717 F.2d 352, 356 (7th Cir. 1983); MB
Financial Bank, N.A. v. MB Real Estate Services, L.L.C., 2003 WL
21462501 *12 (N.D. Ill. June 23, 2003). Where the common aspects
of the mark are fanciful words, an overall impression of
similarity causing confusion is more likely to occur than when
the common aspects are not fanciful. See Eli Lilly & Co. v.
Natural Answers, Inc., 233 F.3d 456, 462 (7th Cir. 2000). "It is
'inappropriate to focus on minor stylistic differences to
determine if confusion is likely' if the public does not
encounter the two marks together. When attempting to determine
if two marks are similar, the comparison should be made 'in light
of what happens in the marketplace, [and] not merely by looking
at the two marks side-by-side.'" Ty, Inc. v. Jones Group, Inc.,
237 F.3d 891, 898 (7th Cir. 2001) (quoting Meridian Mutual
Insurance Co. v. Meridian Insurance Group, Inc., 128 F.3d 1111,
1115 (7th Cir. 1997)).

        Here, the principal common element of the three marks is
the word zone, a commonly used descriptive term. The other parts
of the words have little similarity. As to sound, Oil and Wash
are single syllables, while Auto is two syllables. Plaintiffs
point to a similarity of pronunciation between the "oi" sound in

- 11 -

Oil and the "au" sound in Auto. Webster's Ninth New Collegiate Dictionary, 117, 821 (1988), gives the same ȯ sound to both, but adds an i to the ȯ sound for Oil (oi). As similar as the vowel sound may be, the sound of Oil and Auto are readily distinguishable from each other and Wash is even more readily distinguishable from Auto. Soundwise, Oil Zone, Wash Zone, and AutoZone are all readily distinguishable from each other.

In print and on signs, the sight of defendants' marks and plaintiffs' mark are also readily distinguishable even without having them next to each other. Defendants' marks contain spaces between the first word and Zone, whereas plaintiffs' marks do not. If that were the only distinction, a consumer might not note the difference when not seeing the two signs together. There are, however, a number of other differences as well. Most importantly Oil and Wash are different from Auto. AutoZone's slanted speed bar on the left is a fanciful aspect of the mark that is readily distinguishable from defendants' use of fanciful horizontal underlining and horizontal bars on the right half of the marks. When color is used, defendants use entirely different colors than the colors plaintiffs use. Also, defendants use one color for each mark, whereas plaintiffs use two colors in a single mark. Additionally, plaintiffs use capital and smallcase letters and a sans serif-type font, whereas defendants use all

- 12 -

capitals and a different font style. Sight-wise, there is not great similarity.

Plaintiffs also contend there is similarity in meaning because, like Auto, Oil and Wash are automobile terms. While car wash is a common term and a common type of business, it is not the first meaning that comes to mind when hearing the term wash. Many things are washed. A more common business implied by wash may very well be a laundromat-type business. A soap or skin cleansing business might also use wash in its name. Consulting a standard dictionary reveals 15 definitions of "wash" as a verb, 9 as a noun, and 2 as an adjective. None of the definitions mentions an automobile.[3] However, laundering clothes or fabric, washing one's body, and lotions are all expressly mentioned. See Webster's Ninth New Collegiate Dictionary, 1330 (1988). Plaintiffs, who bear the burden of proving confusion (including the factor of similarity), present no evidence that Wash is understood by consumers as referring to automobiles.

The most common understandings of oil may be associated with the automobile, either as petroleum used to produce gasoline or as an automobile lubricant. Oil is also commonly understand

---

[3]The count refers to the numbering of the definitions. Many of the individual numbers include explicit subdefinitions or could otherwise be viewed as containing multiple definitions.

as referring to vegetable oils, lotions, and paints. Again, plaintiff presents no evidence as to consumer understanding of the term. The dictionary delineates 4 noun definitions and 1 verb definition. One refers to petroleum and another refers to fuel oil. None of the definitions expressly mention any type of vehicle. There are express mentions of cosmetics, bathing, and paints. Id. at 821. At most, it can be assumed that some consumers identify the term oil with automobiles.

In summary, there is not a great similarity between AutoZone and Oil Zone or Wash Zone. Cf. AutoZone, Inc. v. Tandy Corp., 373 F.3d 786, 795-97 (6th Cir. 2004) (comparing AUTOZONE and POWERZONE). Obviously, all contain the word zone. Beyond that, they do not sound especially alike; their appearances are dissimilar; and, other than the possibility that oil is understood as referring to an automobile fuel source or automobile lubricant, their meanings do not particularly overlap, other than the descriptive, common, and nonspecific term zone. As to overall impression, they also are not similar.

The second factor to consider is the similarity of the products that are offered under the mark. The products need not be identical. The question is whether the products are sufficiently related that, in the minds of consumers, the products would "be thought . . . to come from the same source, or

- 14 -

thought to be affiliated with, connected with, or sponsored by, the trademark owner." CAE, 267 F.3d at 679 (quoting Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 958 (7th Cir. 1992), cert. denied, 507 U.S. 1042 (1993)). There is some overlap in that both are in the automobile industry. Plaintiffs, however, primarily sell merchandise, while defendants primarily sell services. Plaintiffs sell a wide range of products while defendants provide a limited number of services. None of the services provided by defendants are also offered by plaintiffs. The closest overlap is that AutoZone will provide for disposal of used oil. Oil Zone has to dispose of the old oil when it provides new oil. Oil Zone sells quarts of oil on rare occasions, which is also sold by AutoZone. AutoZone does sell the products and tools used to perform oil changes and to wash automobiles. Defendants' customers are having a service performed for them. AutoZone's customers generally are purchasing products which they will use in performing the work themselves or have a third party perform the work. While there is some overlap, the parties are offering substantially different products/services under their marks. AutoZone is a large retailer offering a broad array of automobile products and supplies. Consumers are not likely to view Oil Zone or Wash Zone as a possible service-providing affiliate of AutoZone absent

- 15 -

there also being at least a small area offering automobile products while the work is performed. While there is a limited possibility for confusion since both are in the automobile industry, overall, this factor favors defendants because the products/services offered are not similar enough.

The third factor takes into consideration "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." CAE, 267 F.3d at 681 (quoting Forum Corp. of North America v. Forum, Ltd., 903 F.2d 434, 442 (7th Cir. 1990)). Both sets of parties have locations in the Chicago suburbs, including an AutoZone location being less than a mile from the Oil Zone in Wheaton. AutoZone does extensive advertising and promotions. It advertises in print and on radio and television. It also does sponsorships at sporting events. Defendants target the area near their stores with advertising circulars. Defendants do limited sponsorships in the local community and have occasionally done radio advertisements. The receptive audiences would be somewhat different since defendants are looking for customers who want the work performed for them, while AutoZone is primarily aimed at people who do the work. Again, while there is some overlap, the local type of advertising performed by defendants is unlikely to be confused with the type of advertising campaign performed by a

national company like AutoZone.  To the extent one side or the other would be favored by this factor, it would be defendants.

The fourth factor is the degree of care likely to be exercised by consumers.  Confusion is less likely if the consumers are sophisticated and deliberative buyers.  Rust Environment & Infrastructure, Inc. v. Teunissen, 131 F.3d 1210, 1217 (7th Cir. 1997); Central Manufacturing Co. v. Brett, 2005 WL 2445898 *12 (N.D. Ill. Sept. 30, 2005).  "The more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and determination in their purchases."  CAE, 267 F.3d at 683.  The services offered by defendants are relatively inexpensive and are offered by many establishments.  There is nothing to indicate that Oil Zone's or Wash Zone's customers are particularly sophisticated or deliberative.  Defendants contend AutoZone's customers are sophisticated and deliberative because most are do-it-yourself types who would be selective.  There is, however, no particular evidence to support this assertion.  While AutoZone has many inexpensive items in its stores, some items are more expensive.  On the record before the court, it cannot be assumed that AutoZone customers are deliberative and careful about their product choices.  However, since plaintiffs, who bear the burden, also present no specific evidence, it also cannot be assumed that

- 17 -

AutoZone customers are unsophisticated and lack care when selecting products or services. Because it can be inferred that defendants' customers are not sophisticated or deliberative about their choice of car washes or oil changes, this factor raises the possibility of confusion.

The next factor to consider is the strength of plaintiffs' mark. "The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." CAE, 267 F.3d at 684. In determining a mark's strength, the type of mark (e.g., fanciful or descriptive) is considered as well as factors such as the extent of advertising, public recognition, sales, and the length of use. See CAE, 267 F.3d at 685; Telemed Corp. v. Tel-Med, Inc., 588 F.2d 213, 219-20 (7th Cir. 1978); Best Vacuum, 2005 WL 1185817 at *11; Tony Jones, 2003 WL 22220193 at *3. Another consideration is the extent to which third parties use similar marks. McGraw-Edison Co. v. Walt Disney Productions, 787 F.2d 1163, 1171 (7th Cir. 1986); CAE, 267 F.3d at 865; AutoZone v. Tandy, 373 F.3d at 794-95; MB Financial, 2003 WL 21462501 at *17.

Here, AutoZone is a descriptive or suggestive term, which makes it less distinctive than a fanciful or arbitrary term. Plaintiffs, however, have engaged in extensive promotions using

- 18 -

the mark, both nationally and in the Chicago area. The mark has been used for almost 20 years and there are currently about 3,500 retail stores. On summary judgment, it must be assumed that the mark AutoZone is strong. Any confusion, however, would be largely caused by the use of Zone in defendants' marks; defendants do not use the entire term AutoZone. Defendants contend that the extensive use of "zone" in third-party marks shows that plaintiffs' mark is weak in relation to the marks used by defendants. Defendants rely on a search of Patent and Trademark Office records showing that, as of the time of briefing, there were 997 active registered marks that included zone, 14 of which were used by automotive or travel businesses. Defendants also point to an internet search that found 22 active websites selling automotive products or services and using zone.[4] While the evidence may support that the various uses of zone are active, it does not show how extensively any of the marks or sites have been used, promoted, or become known. Therefore, this evidence is insufficient to show that plaintiffs' mark has been weakened by third-party use of zone. McGraw-Edison, 787 F.2d

---

[4]Plaintiffs object to the particular delineation of registered marks and websites because not disclosed in discovery. Defendants represent that similar disclosures were made during discovery and that they performed updated searches at the time of preparing their brief. The submission will be considered.

at 1171; CAE, 267 F.3d at 685; AutoZone v. Tandy, 373 F.3d at 794-95. On summary judgment, it must be assumed that AutoZone is a strong mark. It may be taken into consideration, however, that the potential confusion is primarily based on defendants' use of "Zone" in its marks, which is a common and descriptive term.

Plaintiffs concede they have no evidence of actual confusion.

The last factor to consider is any intentional palming off of products. Defendant Michael Strick, the principal of the two corporate defendants, has testified that he was unaware of AutoZone at the time he selected the Oil Zone name. There is also no evidence of any statements to customers or promotions directly aimed at confusing defendants' businesses with AutoZone. Plaintiffs contend that the extent of its advertising and the number of stores it had in the Chicago area as of 1996 is a reasonable basis for inferring that Strick testified falsely about not knowing of AutoZone when he selected Oil Zone as a name. Even drawing the inference that Strick had a faulty memory regarding his 1996 knowledge of AutoZone, that is not a basis, by itself, for inferring that defendants have been intentionally trying to confuse customers. See Meridian Mutual Insurance Co. v. Meridian Insurance Group, Inc., 128 F.3d 1111, 1119-20

(7th Cir. 1997) ("This testimony, Plaintiff suggests, indicates bad faith on the part of the defendants, since they 'charged ahead with their adoption of "Meridian"' despite their knowledge that the name was already being used by an insurance-related company in Indiana. However, in the trademark infringement context, 'intent' refers to the intent to confuse customers, not merely the intent to use a mark that is already in use somewhere else."). Plaintiffs point to no additional evidence from which an inference of intent to confuse customers can be drawn. On the evidence submitted on summary judgment, there is no genuine factual dispute that defendants engaged in intentional infringement of plaintiffs' mark. Since there is no evidence of such intentional conduct, the seventh factor is irrelevant to the likelihood of confusion analysis. CAE, 267 F.3d at 686.

As is discussed above, this is not a case in which there is great similarity between plaintiffs' mark and the marks used by defendants. While the parties' businesses are in the same general field, automotive products/services, there is also not great overlap between what is offered by the two parties. There is no evidence of actual confusion or intentional infringement. Although plaintiffs' mark is strong, the marks and products/services are not similar enough for a reasonable finder of fact to find that there is a likelihood of confusion.

Defendants are entitled to summary judgment dismissing Counts One
through Three.

Still to be considered is the Count Four dilution claim.
Defendants contend this claim fails for two reasons.  First,
defendants contend that the failure to be able to prove a
likelihood of confusion necessarily means that defendants' marks
are not similar enough to plaintiffs' mark to support a dilution
claim.  Second, defendants contend plaintiffs cannot show actual
dilution.

On October 6, 2006, after the briefs had been filed in
this case, the Trademark Dilution Revision Act of 2006, was
signed into law and became effective immediately.  See Pub. L.
109-312, 120 Stat. 1730 (Oct. 6, 2006).  The damages provision of
the amended statute apply only to offending marks first used
after the Act went into effect.  See 15 U.S.C. § 1125(c)(5)
(2006).  Plaintiffs, however, seek only prospective injunctive
relief.  The amended version of § 1125(c) applies to plaintiffs'
dilution claim.

Section 1125(c)(1) now provides:

Subject to the principles of equity, the owner of
a famous mark that is distinctive, inherently or
through acquired distinctiveness, shall be
entitled to an injunction against another person
who, at any time after the owner's mark has
become famous, commences use of a mark or trade
name in commerce that is likely to cause dilution

by blurring or dilution by tarnishment of the
famous mark, regardless of the presence or
absence of actual or likely confusion, of
competition, or of actual economic injury.

This makes clear that a plaintiff can have a successful
dilution claim regardless of whether it can show actual or likely
confusion. It also overrules prior case law requiring that the
plaintiff show actual dilution in order to succeed on a federal
dilution claim.  See Sullivan v. CBS Corp., 385 F.3d 772, 779
(7th Cir. 2004).[5]  Plaintiffs, however, still bear the burden of
showing at least a likelihood of dilution.

Here, although defendants have raised the issue of an
inability to prove dilution, plaintiffs have made no attempt to
show actual or likely dilution.  Since defendants have raised the
issue and plaintiffs bear the burden of proof, plaintiffs had to

_____

[5]In their brief, plaintiffs make no argument expressly
relying on the state law statute that is also a basis for its
dilution claim.  While prior versions of the statute expressly
referred to an injunction based on "a likelihood of injury to
business reputation or of dilution of the distinctive quality of
the mark" (765 ILCS 1035/15 (1997) (formerly Ill. Rev. Stat.
ch. 140, ¶ 22)), the statute that has been in effect since 1998
requires that the accused mark "causes dilution."  765 ILCS
1036/65(a).  This appears to be an actual dilution requirement.
Therefore, the state law aspect of Count Four fails on the ground
that plaintiffs have failed to provide evidence of actual
dilution.  Cf. Sullivan, 385 F.3d at 779 (affirming dismissal of
federal dilution claim because plaintiff failed to present any
evidence of actual dilution in response to motion for summary
judgment).

- 23 -

respond to summary judgment by presenting sufficient evidence from which a reasonable finder of fact could find actual or likely dilution. Celotex, 477 U.S. at 322; Binz, 301 F.3d at 532; Traylor, 295 F.3d at 790. Cf. Sullivan, 385 F.3d at 779. Plaintiffs assert that they "plan" to present circumstantial evidence of dilution. Pl. Brief at 11. They do not provide any such evidence in response to the summary judgment motion. Also, during the approximately two months since the statute was amended, plaintiffs did not move to supplement their response with evidence and arguments supporting that there is a likelihood of dilution. Even with a change of the law favoring plaintiffs, plaintiffs have not met their burden. Summary judgment will be granted dismissing Count Four.

Since all of plaintiffs' claims are otherwise subject to dismissal, it is unnecessary to address the laches defense. Plaintiffs' claims will be dismissed in their entirety. A judgment will not be entered at this time because counterclaims are still pending.

Within two weeks, the parties shall meet to discuss whether they can settle the remaining aspects of the case. A status hearing will be held on December 21, 2006 at 11:00 a.m. If the case is not settled, the parties must submit an original

and one copy of a final pretrial order in open court on January 10, 2007 at 11:00 a.m. The pretrial order shall be in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1, including trial briefs, proposed voir dire questions (if there will be a jury), motions in limine with supporting briefs,[6] and proposed jury instructions and/or findings of fact and conclusions of law. In the pretrial order, the parties must be clear regarding the burdens of proof imposed on each party and the issues remaining in the case. They also must make clear which issues, if any, are for a jury and which issues, if any, are for the judge to decide. In accordance with the issues remaining for a jury and/or the judge, appropriate jury instructions and/or proposed findings of fact and conclusions of law must be submitted.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [79] is granted. Plaintiffs' cause of action is dismissed. A status hearing is set for December 21, 2006 at 11:00 a.m. If the case is not settled, the parties shall submit in open court on January 10, 2007 at 11:00 a.m. an original and one copy of a final pretrial order in full compliance with Local

_____

[6]A date will be set for filing answer briefs to any motions in limine.

Rule 16.1 and Local Rule Form 16.1.1, including trial briefs, proposed voir dire questions, motions in limine with supporting briefs, proposed jury instructions, and proposed findings of fact and conclusions of law.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED:    DECEMBER 7 , 2006